

40 Broad Street, 7th Floor
New York, New York 10004
Telephone: (212) 943-9080
Fax: (212) 943-9082
www.vandallp.com

**Jack L. Newhouse, Esq.**
jnewhouse@vandallp.com

April 13, 2018

**VIA ECF**
Magistrate Judge Sanket J. Bulsara
United States Courthouse
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    *Sunny Henry, et al. v. HBS Services, LLC, et al*
               Docket No.: 17-cv-94 (MKB) (SJB)

Dear Judge Bulsara:

This firm is counsel to Plaintiffs Sunny Henry and Kenneth Morales ("Plaintiffs") in the above-referenced action. Plaintiffs write on behalf of all parties to inform the Court that a settlement has been reached in this action. In accordance with the Second Circuit's decision in *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015), the parties submit the below letter motion for an order approving the settlement as fair and reasonable, granting attorneys' fees and costs, and dismissing this action with prejudice.

On January 6, 2017, the Plaintiffs commenced this action seeking unpaid overtime compensation pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 207 and 216(b), New York Labor Law §§ 663, 195, 198, and 12 New York Codes, Rules and regulations § 142-2.2 for himself and on behalf of similarly situated individuals employed by Defendants. In addition, Plaintiffs raised claims under the NYLL for violations of § 195 for failing to provide required notices of pay rate upon hire and accurate weekly wage statements.

On April 10, 2017, individual Defendant John Tenorio filed an answer on behalf of himself.  Neither Mr. Tenorio nor corporate Defendant HBS Services, LLC ever retained counsel.  As a result, corporate Defendant HBS Services, LLC has not appeared in this action. To effectuate dismissal of this action, Plaintiffs submit a stipulation of dismissal signed by Plaintiffs' counsel and Mr. Tenorio relating to claims against Mr. Tenorio and a Notice of Dismissal relating to claims against the non-appearing corporate Defendant.

The parties have settled this matter for $19,500.00 inclusive of attorneys' fees and costs. Mr. Tenorio has already provided Plaintiffs' counsel with the check, which is being deposited into escrow and will remain in escrow pending Court approval of the settlement and dismissal of



this action. Under the Agreement, Plaintiffs will each receive $6,450.00 and Plaintiffs' counsel will receive $6,600.00 in attorneys' fees and costs ($5,872.21 in fees and $727.79 in costs). In *Cheeks*, the Second Circuit raised concerns with settlement agreements that contain (1) a battery of highly restrictive confidentiality provisions, (2) overbroad release provisions, and (3) provisions that set attorneys' fees at over 40%. *Cheeks*, 796 F.3d at 206. None of the concerns raised in Cheeks are present in this Agreement. The Agreement will be filed publicly with the Court as an exhibit to this motion, contains only a specific release relative to wage claims filed in the complaint, and does not contain a confidentiality provision. The Agreement calls for the stipulated dismissal of this action with prejudice should the Court approve of same. Accordingly, we believe the Agreement is fair and reasonable in all respects under applicable case law and should be approved by the Court.

The Second Circuit holds that stipulated dismissals pursuant to Rule 41(a)(1)(A)(ii) of the Federal Rules of Civil Procedure settling FLSA claims with prejudice require the approval of the district court or the United States Department of Labor to take effect. *Cheeks*, 796 F.3d at 206. In considering whether to approve an FLSA settlement, the Court should examine the following factors: (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion. *Wolinsky v. Scholastic, Inc.*, 900 F.Supp.2d 332, 335 (S.D.N.Y. 2012). Here, the settlement meets all of these factors.

Plaintiff Sunny Henry's range of recovery is from zero to approximately $36,000.00. Plaintiff Kenneth Morales's range of recovery is from zero to approximately $43,780.00. These maximum recovery amounts assume that Plaintiffs each worked the maximum number of hours they possibly could each week for their entire alleged employment. For Mr. Henry, that is 25 hours of overtime each week for 70 weeks. For Mr. Morales, that is 25 hours of overtime each week for 100 weeks. These numbers also include liquidated damages and penalties for failure to furnish notices under NYLL § 195.

Defendants vigorously dispute Plaintiffs' claims that they were employees, claiming that Plaintiffs were independent contractors. Should Plaintiffs fail to establish an employment relationship with Defendants, Plaintiffs would not be entitled to any recovery at all. In addition, Defendants vigorously dispute the number of hours Plaintiffs worked each week. As a result, even if Plaintiffs were able to establish an employment relationship, liability and damages would turn on the number of hours Plaintiffs worked each week. Plaintiffs contend that Defendants failed to maintain complete and accurate time records, which, if proven, would result in a burden shift, making it easier for Plaintiffs to establish the number of hours she alleges she worked. Nevertheless, Plaintiff would still have to rely on their own recollection and testimony to prove her case. There can be no assurance as to the conclusions the finder of fact would reach concerning the hours Plaintiff worked during her employment with Defendants.



Indeed, if Plaintiffs establish that they only worked 5 hours of overtime every single week for their entire employment, Plaintiffs' damages for unpaid overtime with liquidated damages would decrease substantially. Specifically, Mr. Henry's damages would be $4,724.50 and Mr. Morales's damages would be $7,780.00. Thus, $6,450.00 that each Plaintiff is receiving, after fees and costs, represents a reasonable settlement that is within his range of possible recovery, though lower than the full extent of maximum recovery due to the Defendants' assertion of certain defenses that could limit or entirely bar recovery.

This settlement also enables the parties to avoid the anticipated burdens and expense of litigation over these issues, especially when the range of possible recovery is potentially less than the attorneys' fees or costs either side may have to expend to pursue their claims (e.g., deposition costs, motion practice, trial etc.). Moreover, at this early stage of the proceedings, Plaintiffs are obtaining a recovery without having to go through the time-consuming process of litigating their claims.

A major concern was Defendants' financial ability to satisfy a judgment on the merits in this action. Mr. Tenorio was *pro se* and consistently represented that neither he nor his company, HBS Services, LLC, have the ability to satisfy a judgment on the merits. Prior to settlement, Mr. Tenorio produced confidential financial documents for purposes on settlement. These documents included tax returns, a financial disclosure statement, and bank account records. These records confirm Defendants' representation that continued litigation would substantially increase the risk that Defendants could not satisfy a larger settlement, satisfy a judgment on the merits, or afford counsel through trial.[1]

In light of the foregoing, the parties respectfully request that the Court approve the settlement and dismiss this action with prejudice.

Plaintiffs' counsel seeks approval of $5,872.21 in fees and $727.79 in costs expended on behalf of Plaintiffs, for a total of $6,600.00. Plaintiffs' fees of $5,872.21 represent 30.11% of the total settlement amount, below the standard 33%. In considering the reasonableness of a fee award in FLSA cases, courts consider the following factors set forth in *Goldberger*: (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations. *Goldberger v. Integrated Res. Inc.,* 209 F.3d 43, 53-54 (2d Cir. 2000).

Here, Plaintiff's counsel maintains contemporaneous time records reflecting the tasks performed and the time it took to perform those tasks. Based on these time records, Plaintiff's counsel has devoted 56.10 hours in representing Plaintiffs for a total of $14,302.79 in fees. The work conducted by Plaintiff's counsel in this action includes, but is not limited to: (1) due diligence on Plaintiff's claims, (2) drafting the complaint; (3) preparing Rule 26 disclosures; (4)

---

[1] These financial records also raise questions as to whether Defendants' yearly sales were sufficient for coverage under the FLSA.



drafting correspondence geared toward litigating with a *pro se* Defendant, explaining in more detail the nature and elements of the claims, damages, and procedure; (5) preparing for and attending two initial conferences; (6) preparing a conditional certification motion for immediate filing in the event Defendants did not agree to tolling; (7) negotiating settlement and drafting the settlement agreement; (8) drafting the instant letter motion for approval and dismissal; and (9) meetings and correspondence with the Plaintiff in this case.

The majority of time was billed by me, Jack Newhouse, and a fellow associate Alanna Sakovits. I billed 20.5 hours at a rate of $325 per hour.  I am a 2012 graduate of St. John's University School of Law, and have given trainings on wage and hour issues to numerous non-profits, including, The New York Legal Assistance Group, Palladium, Inc., The Osborne Association, New York City Employment & Training Coalition, and The Silberman School of Social Work at Hunter College. Associate, Alanna Sakovits, billed 19.7 hours at $250 per hour. The remaining hours were billed by paralegals at $125 per hour.

V&A's hourly rates are reasonable. "The reasonable hourly rate is the rate a paying client would be willing to pay." *Arbor Hill Concerned Citizens Neighborhood Assn. v. County of Albany*, 522 F.3d 182, 190 (2d Cir. 2007). To determine the hourly rate, a court should "attempt to approximate the market rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Kalloo v. Unlimited Mech. Co. of NY*, 977 F. Supp. 2d 209, 212 (E.D.N.Y. 2013).

My rate has been approved at $325 in the Southern District of New York in 2017, and at $295 in the Eastern District of New York in 2016. *See Sim v. Hisae Vilca, et al*., 17-cv-699-KBF, at Docket Nos. 22 and 23 (S.D.N.Y.) (in August 2017, Judge Forrest "carefully reviewed the proposed settlement and award of attorneys' fees and costs and finds that they are fair and reasonable." I performed the majority of the work on the matter and the rates used to determine V&A's loadstar were $325 per hour for myself and $125 per hour for paralegal work.); *Gordon v. Chuck Agency, LLC*, Docket No 16-cv-4837-PKC, at Docket Nos. 28 and 29 (S.D.N.Y.) (In June 2017, Judge Castel approved the settlement agreement, including V&A's fees, which amounted to 40% of the total settlement amount. In that case, V&A requested 0.83 times their lodestar. I performed the majority of work on that matter. The rates used to determine the loadstar were $325 per hour for myself and $125 per hour for paralegal work.); *Drakopoulos v. Ardian Corp.*, 15-cv-4717-BMC, Docket No. 28 (E.D.N.Y.) (In March 2016, Judge Brian Cogan found "[t]he attorneys' fees and costs are entirely reasonable and efficient . . . ."  In *Drakopoulos*, I billed 147.1 out of 291.9 hours (111.5 hours were billed by a paralegal) at $295 per hour. Although Judge Cogan questioned the rate charged by V&A's forensic accountant, Judge Cogan nevertheless approved the accountant's rate of $350, finding "the efficiency of the totality of the work is so obvious that the Court sees no reason to unduly scrutinize that rate in the context of the overall settlement.").

The lodestar cross-check, which compares the requested fee to the time and labor expended by counsel, weighs in favor of approving the requested fee in this matter. Here,



Plaintiffs counsel's fees are .41 times its lodestar. This is entirely reasonable considering courts within the Second Circuit have awarded multipliers in excess of a counsel's lodestar. *See, e.g., In re Hi–Crush Partners L.P. Sec. Litig.,* 2014 WL 7323417, at *18 (S.D.N.Y. 2014) (multiplier of 1.41); *In re Visa Check/Master money Antitrust Litig.,* 297 F.Supp.2d 503, 524 (E.D.N.Y. 2003) (multiplier of 3.5); *In re Citigroup Inc. Sec. Litig.,* 965 F.Supp.2d. 369, 401 (S.D.N.Y. 2013) (multiplier of 2.8).  Importantly, the fee requested is already more than 50% from Plaintiffs' counsel's lodestar.

V&A also expended $727.79 in out-of-pocket expenses. "Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were 'incidental and necessary to the representation' of those clients." *In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003) (internal citation and quotation marks omitted).  Here, V&A incurred actual expenses of $727.79 for costs such as court fees, service fees, and legal research fees. These expenses were incidental and necessary to the representation of Plaintiffs.

Public policy also weighs in favor of approving the requested attorneys' fees. The purpose of shifting attorneys' fees to a defendant-employer is to "encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel. But for the separate provision of legal fees, many violations of the Fair Labor Standards Act would continue unabated and uncorrected." *Sand v. Greenberg*, 2010 U.S. Dist LEXIS 1120, at *9 (S.D.N.Y. 2010).

Accordingly, we jointly request that the Court approve of the Agreement, "so order" the proposed stipulation of dismissal, and have it entered on the docket by the Clerk of the Court. Thank you for your time and consideration.

Respectfully submitted,


/s/Jack L. Newhouse

cc:     John Tenorio (via electronic mail)